IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GREGORY SMITH,**

                **Plaintiff,**

vs.                                                   Civ. No. 09-433 JCH/RLP

**FLYING J, INC.**,

                **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Flying J, Inc.'s ("Defendant") *Motion for Summary Judgment*, filed June 17, 2010 [Doc. 34]. The Court, having considered the motion, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Defendant's motion is well taken and should be GRANTED.

## BACKGROUND

This case arises from Gregory Smith's ("Plaintiff") brief employment as a financial services representative at a travel plaza operated by Defendant. Plaintiff claims that Defendant failed to accommodate his request for a flexible work schedule and that Defendant terminated his employment in retaliation for his requested accommodation and because he has obsessive compulsive disorder ("OCD").

In January 2007, Defendant hired Plaintiff to work as a financial services representative at one of its travel plazas in Albuquerque, New Mexico. This job entailed selling services such as credit cards to drivers who patronized the travel plaza. Plaintiff was the only financial services representative at that location, so that when he was absent from work, customers could not be serviced. The financial service center's hours were 9:00 a.m. to 5:00 p.m., Monday through

Friday, and these were the hours for which Plaintiff was hired to work. However, within the first week of his employment, Plaintiff began having trouble getting to work by 9:00 a.m. He contends that his OCD prevented him from getting into work by 9:00 a.m., although he could often get there by 10:00 a.m. The problem, according to Plaintiff, was that it took him a long time to get ready in the morning, because he had to check faucets, repeat tasks, and make sure that things in the house were turned off. Plaintiff testified that, although his OCD prevented him from getting to work on time, it did not prevent him from working a full day once he arrived. Nor was Plaintiff able to identify any way in which his major life activities are limited by his OCD.

Rather than waking earlier, so that he could perform the tasks necessitated by his OCD and still leave his house on time, Plaintiff instead sought to report to work later than his scheduled starting time. On February 27, 2007, he presented his employers with a handwritten note from Dr. Neil Arnet. The note stated "[Plaintiff] has obsessive compulsive disorder which can cause him to be delayed in getting to work. Please allow him accommodation of having a flexible schedule." *See* Ex. D, attached to Defendant's Motion for Summary Judgment (hereinafter "Def't Mot.") [Doc. 34]. Defendant requested further information from Dr. Arnet, asking that he clarify what he meant when he referred to a "flexible schedule" for Plaintiff, so that they could better accommodate Plaintiff's needs related to his condition. *See* Ex. H, attached to Def't Mot.[1] The

---

[1] Defendant cited the request for a second note from Dr. Arnet as an undisputed material fact. *See* Def't Mot. at 3, ¶ 5. Despite the fact that Defendant attached a copy of its letter requesting a second note as an exhibit to its motion, and despite the fact that Dr. Arnet later sent a second note to Defendant, Plaintiff disputed this contention. The sole basis for Plaintiff's dispute is that "Plaintiff cannot say with any certainty that [Defendant] requested a second letter from Dr. Arnet." Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment [Doc. 36] at 10, ¶ 5. The Court reminds Plaintiff's counsel yet again, as it has already had to do on other occasions, that uncertainty about a fact is an improper basis on which to dispute a properly supported proposed fact for summary judgment purposes. If Plaintiff seeks to dispute a fact at the summary judgment stage, he must come forward with specific evidence that

letter specified the financial service center's operating hours and indicated that Plaintiff is the sole employee of the center. *Id*. On March 15, 2007, Dr. Arnet issued a second note, indicating his belief that "Plaintiff can serve customers for a full work day when he arrives late" and recommending that Plaintiff "be given the accommodation of being allowed to arrive late at work as long as he works a full work day." Ex. D, attached to Def't Mot. Dr. Arnet's recommendation appears based on his reasoning that, because Plaintiff works with truck drivers, who utilize the travel plaza 24 hours a day, there are always customers in need of service, and because the plaza provides banking services until 8:00 p.m., Plaintiff should able to work until that time as well. *Id*.

On March 16, 2007, Plaintiff received an email from Defendant's Director of Business Development indicating that, if he is running late, Plaintiff must call both the travel plaza manager and his regional manager prior to 9:00 a.m. to let them know that he will be in late. *See* Ex. 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment (hereinafter "Pl. Resp."). The email also required Plaintiff to maintain a separate detail of his work hours and to submit that detail along with his timesheet. *See id*. Plaintiff does not contend that he was not allowed to come in late, or that he was prevented from working a full eight hour day once he arrived. Instead, he contends that the simple requirement that he call in if he was going to be late, even though he was allowed to report to work late, constitutes a failure to accommodate him. *See* Plaintiff's Deposition (hereinafter "Pl. Depo."), attached as Ex. A to Def't Mot., at 83:2-86:1.

On March 30, 2007, Defendant terminated Plaintiff's employment. The stated reason for Plaintiff's termination was timesheet fraud. Plaintiff does not dispute that timesheet fraud was the reason he was given for his termination, but contends that the real reason he was fired was

---

creates a question of fact for trial.

retaliation for seeking an accommodation and because Defendant did not want to accommodate him. After his termination, Plaintiff filed an unemployment claim with the New Mexico Department of Labor, indicating that he was fired because "I was not meeting my quota because of the stress I was under on the job site." Ex. C, attached to Defendant's Reply in Support of Motion for Summary Judgment [Doc. 37]. On January 22, 2008, Plaintiff filed a charge of discrimination with the New Mexico Department of Labor, Human Rights Division, claiming discrimination and retaliation on the basis of his disability. *See* Ex. F, attached to Def't Mot. On May 4, 2009, Plaintiff filed this suit, listing five counts: (1) Disability Discrimination in Violation of the Americans with Disabilities Act ("ADA"); (2) Failure/Refusal to Provide Disability Accommodation in Violation of the ADA; (3) Retaliation in Violation of the ADA; (4) Retaliatory Discharge in Violation of New Mexico Common Law; and (5) Punitive Damages.

This suit continues a pattern of disability complaints by Plaintiff. By his own testimony, Plaintiff has filed at least four other suits against employers or potential employers claiming discrimination based on his OCD. *See* Pl. Depo. at 11:5-14:23; 27:14-29:6. Plaintiff has not prevailed in any of these previous suits. In fact, despite his denial under oath that he had been sanctioned by a judge in any previous lawsuit, Pl. Depo. at 23:7-16, Plaintiff was ordered to pay over $100,000 in attorneys' fees to a defendant in a previous suit. *See Smith v. Farmers Ins. Exch.*, No. 01-cv-2282 (D. Az. Apr. 21, 2004) (assessing the defendant's attorneys' fees in the amount of $102,027.50 against Plaintiff individually, and making Plaintiff's attorney in that matter jointly and severally liable for $25,000 of the total amount). Remarkably, Plaintiff filed his current suit just over three months after this very Court dismissed one of his previous suits on the ground that his OCD does not constitute a disability within the meaning of the ADA. *See Smith v. Allstate*, No. 07-cv-720 (D. N.M. Jan. 20, 2009). Plaintiff's current suit has no more

merit than his previous one.

## LEGAL STANDARD

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 1572 (1970). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In responding to a motion for summary judgment, the nonmoving party "may not rest upon its mere allegations ... but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its *prima facie* case, any issue concerning other elements of the claim become immaterial. *Id*. at 322-23.

**DISCUSSION**

A. <u>Disability under the ADA</u>

The ADA provides in relevant part that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, [] hiring. . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In the absence of direct evidence, a plaintiff must first establish a *prima facie* case in order to prove a discrimination claim under the ADA. *See Davidson v. America Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate "'(1) that [he] is disabled within the meaning of the ADA; (2) that [he] is qualified—with or without reasonable accommodation; and (3) that [he] was discriminated against because of [his] disability.'" *McKenzie v. Dovala*, 242 F.3d 967, 969 (10th Cir. 2001) (quoting *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir. 1998)). Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless...the accommodation would impose an undue hardship." *Pack v. Kmart Corp.*, 166 F.3d 1300, 1304 (10th Cir. 1999) (citing 42 U.S.C. § 12112(b)(5)(A)).

For purposes of the ADA, a "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). A "major life activity" is a "basic activity that the average person in the general population can perform with little or no difficulty," and includes walking, standing, sitting, lifting, learning, and working. *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495-96 (10th Cir. 2000) (quotation marks and citation omitted). One is "substantially limited" in a major life activity if he

is "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1).

Whether a person has a disability under the ADA is an individualized inquiry.  *See Bragdon v. Abbott,* 524 U.S. 624, 641-42 (1998).  This determination "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."  29 C.F.R. pt. 1630, App. § 1630.2(j); *see also Steele v. Thiokol Corp.*, 241 F.3d 1248, 1253 (10th Cir. 2001) (in determining whether a claimant is disabled, "the ADA demands that we examine exactly how [the plaintiff's] major life activities are limited by his impairment of OCD").  For purposes of this motion, the Court accepts as true Plaintiff's contention that he has had OCD since his teenage years.  However, while OCD may constitute a disability under the ADA for some individuals, Plaintiff has failed to come forward with evidence that his OCD substantially impairs one or more of his major life activities so as to constitute a disability under the ADA.

Plaintiff contends that the major life activities that are substantially limited by his OCD are: (1) taking care of himself; and (2) thinking and concentrating.  *See* Pl. Resp. at 17.  This Court previously rejected Plaintiff's claim that he was substantially limited in his ability to take care of himself in a ruling issued a little more than three months before Plaintiff filed the instant case.  *See Smith v. Allstate*, No. 07-cv-720 (D. N.M. Jan. 20, 2009).  None of the evidence put forth by Plaintiff in this suit changes that determination.  In fact, in this case, Plaintiff has presented even less evidence that he is substantially limited in his ability to take care of himself

than in his claim that the Court previously rejected.

The major life activity of "[c]aring for one's self 'encompasses normal activities of daily living; including feeding oneself, driving, grooming, and cleaning home.'" *Holt v. Grand Lake Mental Health Ctr., Inc.*, 443 F.3d 762, 767 (10th Cir. 2006) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 47 (2d Cir. 2002)). Plaintiff could not name any way in which his OCD limits him, other than taking extra time to get out of the house in the morning. *See* Pl. Depo. at 67:13-68:5. Indeed, Plaintiff's own testimony establishes that, once he gets to work, he is able to put in a full eight hour day. *Id*. at 65:2-16. Plaintiff's testimony does not indicate any limitation in his work that results from his OCD, nor does it indicate any limitation on other daily activities, such as eating, driving, grooming, or cleaning his home.[2] Plaintiff's evidence is insufficient as a matter of law to create a triable fact issue on whether Plaintiff's OCD affects his ability to care for himself as compared to the average person in the general population.

Similarly, Plaintiff's contention that he is substantially limited in the major life activity of concentrating and thinking also fails. As an initial matter, "concentration" is not considered a major life activity by the Tenth Circuit. *See Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999). While the Tenth Circuit has not held that thinking is a major life activity for purposes of

---

[2] Plaintiff also refers to a handwritten psychiatric evaluation by Dr. Neil Arnet, the doctor who wrote the letters to Defendant seeking accommodation for Plaintiff. *See* Pl. Resp. at 17; Arnet Evaluation, attached as Ex. 6 to Pl. Resp. Plaintiff further suggests that Dr. Arnet could testify at trial about Plaintiff's condition. Not only does Dr. Arnet's evaluation fail to establish any substantial limitation in Plaintiff's ability to care for himself, but the evaluation is not acceptable evidence for purposes of this motion. Plaintiff has not established its authenticity through an affidavit or otherwise. Nor has Plaintiff presented any sworn evidence from Dr. Arnet. The Court has no way to evaluate what Dr. Arnet might testify to at trial, and the mere fact that he might testify cannot help to defeat summary judgment.

the ADA, it has assumed, for the sake of argument, that it is in at least one case. *See Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 496 (10th Cir. 2000).[3] This Court will also assume, for purposes of this motion, that thinking is a major life activity under the ADA. However, even making this assumption, Plaintiff has failed to demonstrate that his ability to think is substantially limited by his OCD. Plaintiff has not provided evidence that he is limited in any way except for needing extra time to get to work in the morning, and he testified that he was capable of working a full day once he arrived at work. *See* Pl. Depo. at 65:2-17; 67:13-68:5.[4] Although Plaintiff attaches a letter addressed to Plaintiff's counsel from Dr. Steven Sacks, a doctor who evaluated Plaintiff almost a year after Defendant terminated his employment, this letter is unsworn and is inadmissible at the summary judgment stage for the same reason that Dr. Arnet's evaluation was inadmissible. Further, Dr. Sacks' letter offers no evidence that Plaintiff is significantly limited in the major life activity of thinking. It says only that Plaintiff "requires consideration for interruptions during his workday because of his uncontrollable needs to respond to compulsive

---

[3] Plaintiff spends six pages of his reply brief simply reproducing excerpts from the EEOC's Enforcement Guidance on the ADA and Psychiatric Disabilities, without any analysis. However, EEOC Guidelines have no force of law and are not binding on the Court. *See Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 n.5 (EEOC's guidance is not entitled to any special deference). Moreover, even though the EEOC Guidelines provide that an individual with OCD may be disabled under the ADA, whether a particular claimant is disabled is an individual determination, and Plaintiff has not demonstrated that he is substantially limited in a major life activity.

[4] Plaintiff attempts to blame his failure to present evidence of other complications caused by his OCD on Defense counsel's failure to ask sufficient questions at his deposition. *See* Pl. Resp. at 12-13 ("[Defense counsel] did not ask [Plaintiff] if he could [work a full day] without any restrictions or interruptions throughout his 8 hour period because of his OCD"). It is incumbent upon Plaintiff to present the evidence he needs to make his *prima facie* case; Defense counsel is not obligated to ask the questions Plaintiff wishes to answer. In any event, Defendant gave Plaintiff a full opportunity to list any limitations caused by his OCD. *See* Pl. Depo. at 67:13-68:5.

behaviors involving checking, counting and the need for repeated hand washing rituals." Ex. 5, attached to Pl. Resp. [Doc. 37]. Thus, even if the letter was admissible, it falls far short of demonstrating a substantial limitation in Plaintiff's ability to think.

Because Plaintiff has not presented any sworn evidence that demonstrates that he is substantially limited in a major life activity, he cannot show that he is disabled, and therefore cannot make his *prima facie* case for disability discrimination under the ADA. Because Plaintiff cannot demonstrate that he had a disability under the ADA, he cannot invoke the protections of the ADA. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1161 (10th Cir. 1999). Thus Counts I and II are dismissed.[5]

B. Retaliation

Plaintiff also claims that Defendant terminated his employment in retaliation for seeking accommodations for his disability. In a case such as this one, where Plaintiff does not offer direct evidence of retaliation, the Court analyzes a retaliation claim under the burden-shifting framework delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Proctor v. UPS*, 502 F.3d 1200, 1207-08 (10th Cir. 2007). Under this framework, if Plaintiff can establish a *prima facie* case of retaliation, the burden shifts to Defendant to assert a legitimate, nondiscriminatory reason for the adverse action. *See Piercy v. Maketa*, 480 F.3d 1192, 1198

---

[5] Even if Plaintiff could make a *prima facie* case of disability discrimination or failure to accommodate, these claims are time barred. A plaintiff has 300 days following an act of discrimination in which to file administrative charges. *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006). Plaintiff contends that Defendant's requirement, instituted as late as March 16, 2007, that he telephone his supervisors if he was going to be late to work, constituted an actionable failure to accommodate. *See* Pl. Depo. at 84:24-86:1. Plaintiff did not file his charge with the New Mexico Department of Labor until January 22, 2008. This was more than 300 days after the alleged failure to accommodate occurred, so, in addition to being meritless, these claims are time-barred

(10th Cir. 2007).  If Defendant can provide such a nondiscriminatory reason for its action, the burden shifts back to Plaintiff to come forward with admissible evidence to show that Defendant's proffered reason is a "pretext masking discriminatory animus."  *Id*.

In order to establish a *prima facie* case of retaliation, Plaintiff must show: (1) he engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action to be materially adverse; and (3) a causal connection existed between the protected activity and the materially adverse action.  *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).  For purposes of this motion, the Court will assume that Plaintiff engaged in protected activity when he made a request for an accommodation for his OCD.  A reasonable employee would certainly find termination to be a materially adverse action, so Plaintiff meets the second prong of the *prima facie* case as well.  Regarding the requirement of a causal connection, a Plaintiff may offer "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006).  Plaintiff first submitted a note from Dr. Arnet requesting accommodation on February 27, 2007, a little over a month before Plaintiff's March 30, 2007 termination.  For purposes of this motion, the Court will assume that the proximity between the request and the termination is sufficiently close to meet the causal connection requirement.

Assuming that Plaintiff has met his *prima facie* case, Defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.  It has met this burden by stating that Plaintiff was fired for falsifying his timesheets, as his timesheets showed that he was at work when he was not.  Plaintiff does not contest that Defendant told him he was being fired for timesheet fraud.  *See* Pl. Resp. at 13-14, ¶ 13.  What Plaintiff now believes

about the reason for his termination is not relevant. He has offered no evidence to show that Defendant's proffered reason for terminating him was pretextual, and thus has not created a genuine issue of material fact. Therefore, his retaliation claims cannot survive summary judgment either.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's *Motion for Summary Judgment* [Doc. 34] is GRANTED.

_____
**UNITED STATES DISTRICT JUDGE**